UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| OMAR W. ROSALES | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| VS. | § | |
| | § | |
| TRAVIS COUNTY; | § | CIVIL CASE NO: 5:21-CV-199 |
| | § | |
| HON. TIM SULAK in his official and | § | |
| individual capacity as a former Travis | § | |
| County District Judge, | § | |
| | § | |
| HON. SARAH ECKHARDT in her official | § | |
| and individual capacity as former | § | |
| Travis County Judge and bond table | § | |
| policy maker, | § | |
| | § | |
| HON. MARGARET MOORE in her | § | |
| official and individual capacity as Former | § | |
| Travis County District Attorney and bond | § | |
| table policy maker, | § | |
| | § | |
| HON. SALLY HERNANDEZ in her | § | |
| official and individual capacity as | § | |
| Travis County Sheriff, | § | |
| | § | |
| HON. ORLINDA NARANJO in her | § | |
| official and individual capacity as a part- | § | |
| time contract judge for Travis County, and | § | |
| | § | |
| HON. DANNY THOMAS in his official | § | |
| and individual capacity as Constable of | § | |
| Travis County Precinct 1 | § | |
| | § | |
| **Defendants** | § | |

## **COMPLAINT**

TO THE HONORABLE U.S. DISTRICT JUDGE:

**COMES NOW**, Plaintiff OMAR W. ROSALES and brings this cause of action

against TRAVIS COUNTY, HON. TIM SULAK, HON. SARAH ECKHARDT, HON.

MARGARET MOORE, HON. SALLY HERNANDEZ, HON. ORLINDA NARANJO, and HON. DANNY THOMAS. ("DEFENDANTS"). For two years, DEFENDANTS TRAVIS COUNTY, ECKHART, and MOORE delayed implementing the bond reforms mandated by the United States Court of Appeals for the Fifth Circuit in the *ODonnell v. Harris County* decision. These actions led to the illegal incarceration of hundreds of black and latinx inmates in the Travis County Jail, including the Plaintiff.

DEFENDANTS TRAVIS COUNTY, SULAK, HERNANDEZ, NARANJO, and THOMAS illegally and maliciously arrested and imprisoned the Plaintiff, an officer of the Court and Disabled Marine Corps veteran, in direct violation of the Texas Gov't Code § 21.002(d) in a civil debt collection case to force the Plaintiff to pay $250,000 to two attorneys that were close friends and neighbors to DEFENDANT SULAK. Although, DEFENDANT TRAVIS COUNTY claims to run a random case assignment system, the system can be manipulated with the help of court coordinators and allowed the pair of attorneys to get four consecutive settings in front of DEFENDANT SULAK, even though SULAK was not the presiding judge of the 419th District Court. Rather than merely an isolated incident, local attorneys know that SULAK was a judge who would routinely help local attorneys in exchange for favors. In addition, DEFENDANT THOMAS was previously investigated for falsifying training records.

DEFENDANTS improperly and illegally operated a bail detention system that is unconstitutional, discriminated against the poor and minorities, hastened minority inmate deaths under mysterious circumstances at the Travis County Jail, and ran counter to current Fifth Circuit precedent regarding bail and bond procedures.

## I. BACKGROUND

1.      Instead of administering equal justice in criminal and civil cases, Travis County refused to implement the *ODonnell v. Harris County* decision for two years. This led to the unlawful detention of thousands of indigent and minority residents, depriving the liberty of those who could not afford payment, while allowing those who could afford payment to go free. The County set these payment amounts without any meaningful hearing. The result was a county jail filled with thousands of people who were incarcerated simply because they could not afford to purchase their release. Shockingly, many Black and Latinx inmates died in the Travis County Jail under mysterious circumstances and all deaths were reported as due to 'natural causes.' In 2018, Travis County broke a record for inmate deaths at the county jail.

2.      An arrest warrant with a $20,000 all-cash bond (equivalent to a $200,000 cash surety bond) was issued for PLAINTIFF OMAR W. ROSALES on a civil debt collection case in violation of Tex. Gov't Code § 21.002(d). As an officer of the court and a licensed attorney, Mr. Rosales cannot be incarcerated on a contempt charge. Rather, State law specifies that Rosales is due a personal recognizance bond and a formal hearing by a separate judge appointed by the Chief Administrative Judge of the region.

3.      Prior to the illegal arrest warrant being issued by DEFENDANT SULAK, Mr. Rosales was sued for a debt of $250,000.00 in the 419th District Court of Travis County. SULAK is not the presiding judge of the 419th District Court. The lawsuit was illegal, because the Texas Supreme Court prohibits suing opposing counsel to collect attorney's fees under *litigation privilege* and the *attorney immunity doctrine* of

the *Byrd* decision of 2015. *See Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477 (Tex. 2015).

4.    The plaintiffs and creditors in the debt lawsuit were Austin attorneys Jason Panzer, Charles Herring, and James C. 'Jim' Harrington. Panzer and Herring are friends of DEFENDANT SULAK and Herring is Sulak's <u>neighbor</u> in the wealthy Austin enclave of Tarrytown.

5.    Panzer and Herring were able to manipulate the random case assignment system in Travis County District Courts, with the help of DEFENDANT SULAK'S court coordinator. In fact, although Judge Catherine Mauzy is the presiding judge of the 419th District Court, all of the hearings were routed to DEFENDANT SULAK. Sulak held four consecutive hearings in the Rosales debt collection case. With over 20 full and part-time judges, the random chance of this occurrence is 1 in 160,000.

6.    Panzer and Herring requested and obtained four special hearings before DEFENDANT SULAK.  Herring was able to get these hearings because he is friends with Sulak and is Sulak's neighbor in Tarrytown. Service of the lawsuit was defective to begin with, as Rosales was never served with the petition. In fact, the defective return only shows a date stamp with a line on a postcard. This is insufficient service under Texas Rules of Civil Procedure, Rule 107. *See* TEX. R. CIV. P. 107 (When a citation is served by registered or certified mail as authorized by Rule 106, the officer's return must "contain the return receipt with the addressee's signature."); *see also Fellows v. Adams* (Tex.App.- Houston [1st Dist.] Oct. 18, 2007).

7.    Travis County District Judge TIM SULAK then issued an arrest warrant for Mr. Rosales and set his all-cash bond at $20,000 ($200,000 cash surety equivalent) even though:

    a)  Mr. Rosales was never served;

    b)  Mr. Rosales was indigent and could not afford counsel or the bond amount;

    c)  No inquiry was made as to Mr. Rosales's ability to pay;

    d)  Mr. Rosales has <u>no prior</u> criminal history, arrests, or convictions;

    e)  the Texas Constitution, U.S. Constitution, and Federal Fair Debt Collection Practices Act (FDCPA) all prohibit the arrest and incarceration of debtors; and

    f)  Rosales is a licensed attorney, who should have automatically received a personal recognizance bond, an appointed attorney, and the appointment of a judge by the Chief Administrative Judge of the region, under Tex. Gov't Code, §21.002(d).

8.     Mr. Rosales's bail amount was set after DEFENDANT SULAK used the Travis County Bail Schedule for a **Felony crime**. Mr. Rosales has no prior criminal history, has never been arrested, and does not even have unpaid parking tickets or overdue library books. Yet, DEFENDANT SULAK set Rosales's bail even though State law mandates a personal recognizance bond.

9.     The plan was to keep Rosales in jail and force him to pay debt collectors Panzer, Herring, and Harrington the $20,000 all-cash bond as a portion of the debt owed. The all-cash bond of $20,000 was equivalent to a $200,000 cash surety bond even though PLAINTIFF was never charged with any crimes. More importantly, the warrant and bond clearly state that upon the arrest of Rosales, the officers were to call Debt Collector Jason Panzer at 512-680-3067 and Travis County court staffer Warren Vavra at 512-854-9089.

```
ADD:1000 SAN MARCOS STREET,#215               HT: 5'8"
AUSTIN, TEXAS 78702                           WT: 180 LBS
                                              RACE: HISPANIC
                                              HAIR: BLACK
EMP:UNKNOWN                                   EYES: BROWN
                                              DOB: 02/06/1975
                                              SEX: MALE

SSN#:UNKNOWN
DR#:15252212
```

### C A P I A S

TO ANY SHERIFF OR ANY CONSTABLE WITHIN THE STATE OF TEXAS,
GREETINGS:

You are hereby COMMANDED to arrest and take body of OMAR WEAVER ROSALES if he/she be found in that county, EITHER until OMAR WEAVER ROSALES posts a cash bond in the amount of $20,000 in cause number **D-1-GN-18-006640** ,

**Upon arrest of OMAR WEAVER ROSALES please contact (attorney) JASON PANZER at 512-680-3067 and Warren Vavra at (512) 854-9089 OR 512-854-4486 OR 512-854-2484 OR 512-854-8671.**

Herein fail not, but of this Writ make due return, showing how you have executed the same.

**WITNESS MY HAND** and the seal of said Court of Austin, Texas FEBRUARY 21,2019.

```
Requested by:
JASON M. PANZER
1411 WEST AVE STE 100
AUSTIN, TEXAS 78701-1537
BUSINESS PHONE (512)320-00665
FAX: (512)519-7580
```



Velva L. Price
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, TX 78701

PREPARED BY: NANCY RODRIGUEZ

-- - -- - -- - -- - -- - -- **R E T U R N** -- - -- - -- - -- - -- - -- - --

Came to hand this _____ day of _____, _____ at _____ o'clock ____.M. by arresting him/her
as I am within commanded, and I have him/her before the Court.

Dated the _____ day of _____, _____.

```
                                              Sheriff / Constable


                                              By:_____

                                              Printed Name of Server

                                              _____ County, Texas
```

```
    D-1-GN-18-006640               CONSTABLE                        P53-16
       Original
```

**Fig. 1 – Illegal Arrest Warrant for Plaintiff.** Note the warrant states: Cash Bond of $20,000; Requested by: Jason Panzer; Upon arrest contact (attorney) Jason Panzer at (512) 680-3067. The warrant includes the digital signature of Travis County District Clerk Velva Price. Arresting debtors in a debt-collection case is illegal under both the U.S. Constitution and Texas Constitution. Under the Texas Government Code, §21.002(d), Mr. Rosales is due a mandatory Personal recognizance bond and the hearing must be held by a judge appointed by the Chief Administrative Judge of the region.

10.     DEFENDANT TRAVIS COUNTY did not appoint Mr. Rosales an attorney before his bail was set. No official ever asked whether Rosales could afford bail. Pre-trial services never interviewed Mr. Rosales. Travis County then sent an armed constable, Mr. Dale Multer, to Rosales's apartment on multiple occasions in order to harass, intimidate, and forcibly detain Rosales. Multer repeatedly returned to Mr. Rosales's apartment over many months in order to arrest Rosales for debt – even though arresting debtors is illegal in Texas and in the meantime, Travis County could have employed Multer to search for dangerous Travis County fugitives.

11.     Being incarcerated for days or weeks is a dramatic deprivation of liberty. The consequences extend beyond the harm of jail time itself. A person who is detained for even a few days may lose income or employment from missing work; he may miss rent payments and get evicted; he may miss school; he may lose custody of children because of inability to arrange for child care; he might suffer long-term psychological problems; and he might even lose his professional or occupational licenses.

12.     Due to the substantial and well-recognized liberty interests at stake, Federal courts have not hesitated to enjoin strikingly similar bail practices in Harris County, Texas; Galveston County, Texas; Dallas County, Texas; and elsewhere in the United States. Travis County's practices in this case violate the Plaintiff's substantive and procedural due process rights, infringe Equal Protection guarantees, and undermine the constitutional right to counsel. Travis County's actions also clearly violated the Tex. Gov't Code, § 21.002(d).

13.     Travis County policymakers refused to correct these practices despite considerable public pressure. Despite the ruling from the United States Court of Appeals for the Fifth Circuit in *ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th

Cir.2018), the Defendants failed to implement the Fifth Circuit decision for two years and caused many additional minority residents, including the Plaintiff, to be unjustly and illegally incarcerated.

14.     In addition, many African-American and Latinx inmates (that could not post bail) died in the Travis County Jail, where the County later attributed their deaths to 'Natural Causes'. *See* **Exhibit 1**, *supra*. Family members report that these victims were healthy when they were arrested and incarcerated.

15.     These minority individuals were thrown in jail to force them to 'plead out' and save the Travis County District Attorney's Office from the cost and time involved in a jury trial of the accused. Thus, defendants are forced to choose between two alternatives: a) plead out quickly for a crime they did not commit or b) spend months or years in jail awaiting trial because these individuals could not afford their bond.

16.     Plaintiff brings this action for injunctive relief on behalf of himself. Plaintiff would show the Court as follows:


## II. PARTIES

17.     Plaintiff OMAR W. ROSALES is a decorated and disabled Marine Corps Veteran with a 100% VA Disability Rating. Mr. Rosales was on Active duty in the Marines from 1997-2003 at left at the rank of Captain. He served two overseas tours and deployed with the 22nd Marine Expeditionary Unit (FMF) in 2001. His decorations include the Navy Achievement Medal, National Defense Service Medal, Global War on Terrorism Medal, Meritorious Unit Commendation (2nd award), Sea Service Deployment Ribbon (2nd award), General's Certificate of Appreciation (2 awards), and Certificates of Appreciation (11 awards).

 

**Fig. 2 – Plaintiff Omar W. Rosales**, CAPT USMC 1997-2003

18.     Plaintiff has Disabled placards for his vehicle and a check with the state driver's license database indicates that Mr. Rosales is a Disabled Marine Corps veteran. Due to his medical conditions of Malignant Hypertension, Cervical strain, Tinnitus, and PTSD, Mr. Rosales is on a regimen of 4 medications and cannot maintain steady employment. To supplement his income, Mr. Rosales helps other disabled people work on their Social Security Disability Insurance and Veterans Administration claims.

Mr. Rosales is a "qualified individual with a disability" within the meaning of ADA Title III and a "person with a disability" within the meaning of Chapter 121. Rosales was also indigent with an annual salary of less than $10,000 a year and lived below the poverty line at the time of his arrest.

19.     Defendant TRAVIS COUNTY is one of the wealthiest counties in the

United States and is a county organized under the laws of the State of Texas. The Travis County Commissioner's Court is the final County policymaker for funding and operating a personal bond office.

20.     Former District Judge and Defendant TIM SULAK is the judge who signed the arrest warrant authorizing force to detain and deprive Mr. Rosales of his liberty, until Mr. Rosales posted a $20,000.00 all-cash ($200,000 cash surety equivalent) bond.  Defendant TIM SULAK was aware the bond was illegal because: a) the lawsuit was never served upon Mr. Rosales, b) Texas Gov't Code §21.002(d) mandates a personal recognizance bond for Rosales, c) counsel was not appointed for Mr. Rosales, d) no inquiry was made as to Rosales's ability to post the bond, e) and Sulak is not the presiding judge of the 419th District Court.

21.     Debt collectors Pazner, Herring, and Harrington manipulated the random case assignment system (with the help of Travis County employee Warren Vavra) to get four consecutive settings in front of Sulak. Sulak is Herring's neighbor in Tarrytown. Previously, a Change.org petition was filed against DEFENDANT SULAK and obtained nearly 2,000 signatures as it was alleged that Sulak was biased, engaged in *ex parte* communications, and was misogynistic.

22.     SULAK voted as part of an administrative body to pass local rules of administration for felony cases in Travis County.  SULAK is deemed to be a policymaker for his ability to set bond amounts and order the arrest of Defendants in civil cases. SULAK failed to implement the Fifth Circuit decision in *ODonnell v. Harris County.* SULAK also ordered that upon PLAINTIFF'S arrest, that the officers call Austin Debt collector attorney Jason Panzer on Mr. Panzer's personal cell phone at (512) 680-3067. TIM SULAK is sued in his individual and official capacity for declaratory and injunctive

relief.

23.     Defendant SARAH ECKHARDT is a former Travis County Judge. Eckhardt voted as part of an administrative body to pass local rules of administration for cases in Travis County. This judge is deemed to be a policymaker for her ability to vote and ratify the bond table. Eckhardt failed to implement the *ODonnell v. Harris County* decision. Defendant Eckhardt is sued in her individual and official capacity for declaratory and injunctive relief.

24.     Defendant MARGARET MOORE is the former Travis County District Attorney. She was the final Travis County policymaker for bail-setting policies that govern her prosecutors. Moore failed to implement the *ODonnell v. Harris County* decision for two years. She is sued in her individual and official capacity for declaratory and injunctive relief.

25.     Defendant SALLY HERNANDEZ is the Travis County Sheriff. She is the final Travis County policymaker for the Travis County Jail and she is tasked with providing innovative law enforcement and correctional services in a holistic manner through collaborative partnerships. Instead of following State law, DEFENDANT HERNANDEZ violated the Sandra Bland act as the jailers: a) took away PLAINTIFF'S VA-issued high blood pressure medication, b) refused to take the PLAINTIFF to the hospital when his blood pressure sky-rocketed, c) took away PLAINTIFF'S VA-issued disability appliances - his orthotics for plantar fasciitis, and d) refused to provide him with the appropriate medication for his malignant hypertension and depression.

26.     Defendant ORLINDA NARANJO is a former Travis County District Judge who retired then accepted employment as a part-time judge for Travis County. NARANJO: a) presided in Rosales's detention hearing, b) refused to release Rosales on a

personal recognizance bond in violation of Tex. Gov't Code §21.002(d), c) refused to

appoint Rosales counsel, d) never advised Rosales of his right to counsel, e) never

advised Rosales of his right to a jury, f) insisted that Rosales represent himself while

handcuffed, in shackles, and in a jail jumpsuit, and g) refused to contact the Chief

Administrative Judge for the appointment of a special judge. Naranjo also failed to follow

the *ODonnell v. Harris County* decision.

27.    Defendant DANNY THOMAS was the Constable of Travis County

Precinct 1 at the time of the Rosales's arrest. THOMAS ordered several employees to

arrest and forcibly detain Mr. Rosales, first at Mr. Rosales's residence and then the

airport. After Rosales's arrest at 3:15pm on November 14, 2019 at the airport, the

constables refused to take Mr. Rosales to court or a Justice of the Peace, and instead took

Rosales to Central Booking at the Travis County Jail. THOMAS was previously caught

on August 9, 2017 submitting fake attendance rosters to the Texas Commission on Law

Enforcement for a training involving service of civil papers. THOMAS was signing-in

and claiming attendance on behalf of his friend and second-in-command, Chief Constable

Craig Howard who was home on medical leave.


### III. SUMMARY OF LAW

28.    In 2015, the Texas Supreme Court granted attorneys immunity from

lawsuits seeking to collect attorney's fees or costs while the attorney was representing a

client. This is known as *litigation privilege* and the *attorney immunity doctrine,* as noted

in the *Byrd* decision of 2015. *See Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477 (Tex.

2015). In 2019, the Fifth Circuit also adopted this doctrine in *Troice v. Greenberg. See

Troice v. Greenberg Traurig, L.L.P.,* No. 17-11464 (4/17/19 5th Cir. 2019)

29.     The Federal Fair Debt Collection Practices Act prohibits the arrest or threatening debtors with arrest in order to collect debts. *See* 15 U.S.C. §1692. The Texas Constitution prohibits the arrest of debtors. *See* TEXAS CONST. Art I, §18.

30.     The Fifth Circuit ruling in *ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018) affirms the Southern District of Texas decision that indigent Defendants must be released from county detention and cannot be held in jail due to their inability to pay their bail amounts.

31.     The Texas Government Code §21.002(d) notes that attorneys, as officers of the court, may only be given personal recognizance bonds before a contempt hearing is conducted. In addition, the presiding judge must contact the Chief Administrative Judge of the region, to appoint a separate judge for the contempt hearing.

32.     The Sixth Amendment to the U.S. Constitution notes that indigent Defendants have the right to counsel. As a contempt hearing carries the possibility of a fine up to $500 and six-months imprisonment, indigent Defendants in a contempt hearing have the absolute right to court-appointed counsel. *See Gideon v. Wainright,* 372 U.S. 335 (1963).

# IV. STATEMENT OF CLAIM

33.     Mr. Rosales, a decorated and disabled Marine Corps Veteran, brings this action for declaratory and injunctive relief, attorney's fees, costs, compensatory damages, punitive damages, and litigation expenses against Defendants for violations of 42 U.S.C. §1983, *et seq.* ("§1983"), and the Sixth and Fourteenth Amendments to the United States Constitution.

34.     Defendants operated an illegal bail system that creates a debtor's prison in Travis County by issuing bail amounts in criminal and civil cases without regard to a

defendant's ability to pay. Moreover, the Defendants purposely and knowingly violated Fifth Circuit precedent in *ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018) and the Texas Constitution by imprisoning criminal defendants and civil defendants (such as the Plaintiff) even though the *ODonnell* decision specifically prohibits these practices.

35.     Although Travis County claims to have a random case assignment system, the system can be manipulated with the help of court coordinators. Indeed, the judge that issued the illegal arrest warrant for Plaintiff Rosales was not the presiding judge of the 419th District Court – where the debt collection case was docketed. In fact, DEFENDANT TIM SULAK is a neighbor and close friend of debt collector Charles Herring. It was widely known that Sulak would improperly assist local attorneys as nearly 2,000 Austin residents signed a Change.org petition to remove Sulak on the basis of bias, *ex parte* communications, and misogyny. The chances of Sulak randomly getting the case assignment for four consecutive hearings in Travis County were a staggering 1 in 160,000.

36.     It is this culture of entitlement, lack of diversity, punishing Black and Latinx residents, and a pay to play system that runs rampant throughout Travis County. In the meantime, thousands of individuals remained locked up in the Travis County Detention system and detainees routinely died in this modern-day concentration camp. The policymaker DEFENDANTS listed in this lawsuit knew about the reforms ordered by the Fifth Circuit in 2018 to the Texas Bail system in the *ODonnell v. Harris County* decision, yet DEFENDANTS failed to implement or intentionally disregarded this ruling for two years.

37.     Based on these facts, DEFENDANTS denied Mr. Rosales his rights under the U.S. Constitution, Texas Constitution, Federal Fair Debt Collection Practices Act,

Texas Government Code §21.002(d), and the Sandra Bland Act.

## V. JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §1983 for violations of the Sixth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction).

39.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as the events complained of occurred in the City of Austin, Travis County, which is situated in in the Western District of Texas.  In addition, an arrest warrant was issued for Mr. Rosales in Travis County.  An armed Travis County constable named Dale Multer also attempted to arrest Mr. Rosales in Travis County on multiple occasions and deprive him of liberty via unlawful use of force.

## VI. FACTS

### I. DEFENDANT TIM SULAK ILLEGALLY ORDERED THE ARREST OF ROSALES ON A DEBT COLLECTION CASE; ATTORNEYS WHO OBTAINED THE $20,000 BOND ARE FRIENDS AND NEIGHBORS OF SULAK, BOND WAS A PREJUDMENT GARNISHMENT

40.     Mr. Rosales was sued for an alleged debt of $250,000 on 11/3/2018 in D-1-GN-18-6640. In the debt lawsuit, Austin attorneys Jason Panzer and Charles Herring submitted <u>inflated fee bills</u> and initially claimed a staggering $195,000 was due for <u>one</u> court appearance that lasted <u>one</u> day.

41.     Plaintiff Rosales was never served a copy of the debt lawsuit, nor was Mr. Rosales's long-time attorney Gaines West provided a copy of the lawsuit.  Even though the debt collection attorneys Jason Panzer and Charles Herring knew Mr. Rosales's

apartment address in Austin and former office address in New York, they never served him with a copy of the lawsuit.

42.     Instead, the debt collection attorneys sent the petition to an old PO Box address. Afterwards, attorneys Panzer and Herring claimed the lawsuit was served even though the Certified Mail Return Receipt does not contain a signature, in violation of TRCP Rule 107. *See* TEX. R. CIV. P. 107 (When a citation is served by registered or certified mail as authorized by Rule 106, the officer's return must "contain the return receipt with the addressee's signature."); see also *Fellows v. Adams* (Tex.App.- Houston [1st Dist.] Oct. 18, 2007). *See* **Exhibit 2**.

43.     In 2015, the Texas Supreme Court granted immunity to attorneys, when attorneys are representing clients in a court proceeding. This means that attorneys representing clients cannot be levied attorney's fees or costs as part of the litigation. This is known as *litigation privilege* and *attorney immunity doctrine.* This doctrine was birthed by the Texas Supreme Court in the *Byrd* decision of 2015. *See Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477 (Tex. 2015). The Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 also prohibits arresting debtors or threatening to arrest debtors to collect a debt. The Texas Constitution (Article I, §18) also outlaws arresting debtors for debt.

44.     However, the three debt collector attorneys Jason Panzer, Charles Herring, and James C. 'Jim' Harrington and DEFENDANT SULAK attempted to illegally deprive Mr. Rosales of his liberty and coerce Rosales to pay the debt via an illegal arrest warrant issued by DEFENDANT SULAK. Mr. Rosales was faced with the same difficult choice that was illegally forced upon many residents of Travis County: a) pay your bond or b) stay in jail.

45.    Despite all of the illegality, the attorneys and Defendant TIM SULAK carried out the scheme to have Mr. Rosales arrested.  The scheme included:

a)    not serving a copy of the lawsuit on Mr. Rosales;

b)    claiming Rosales was served at an old PO Box address in violation of TRCP, Rule 107;

c)    sending discovery materials to Mr. Rosales without perfecting service;

d)    using Travis County court employee Warren Vavra to obtain four consecutive settings in front of Judge Sulak, even though Sulak was not the presiding judge of the 419th District Court and Travis County claims to have a 'random' case-assignment system;

e)    finding Mr. Rosales in contempt without Mr. Rosales's appearance in case;

f)    serving papers to an unknown person in New York that did not match Mr. Rosales's physical description;

g)    setting an all-cash bond amount (and pre-judgment garnishment) of $20,000 to deprive Mr. Rosales's liberty without inquiry into Rosales's ability to post bail;

h)    not appointing counsel for Rosales, not inquiring into Rosales's ability to pay for counsel, and not advising Rosales on his right to counsel at the bond hearing; and

i)    ordering the arrest of Mr. Rosales for a civil debt collection case that he was never notified of, nor made an appearance for.

46.     DEFENDANT SALLY HERNANDEZ deprived Mr. Rosales of his rights including:

a)      confiscating Plaintiff's government-issued medications for his high blood pressure and depression;

b)      refusing to transport Mr. Rosales to the hospital when his blood pressure spiked;

c)      not providing Mr. Rosales the medications he required; and

d)      confiscating Plaintiff's government-issued disability appliances;

47.     DEFENDANT ORLINDA NARANJO deprived Mr. Rosales of his rights including:

a)      not advising Mr. Rosales of his right to counsel;

b)      not advising Mr. Rosales of his right to a jury trial;

c)      not following Tex. Gov't Code §21.002(d) by releasing Mr. Rosales on a personal recognizance bond and requesting the Chief Judge of the region to appoint a judge for the hearing;

d)      refusing Mr. Rosales's request to re-set the hearing;

e)      making Mr. Rosales appear in handcuffs, shackles, and a soiled jail uniform;

f)      not allowing Mr. Rosales to call witnesses at the hearing; and

g)      not allowing Mr. Rosales to access legal materials and books for the hearing.

48.     DEFENDANT DANNY THOMAS deprived Mr. Rosales of his rights including:

      a)     not taking Mr. Rosales to a court or justice of the peace, even though courts were still in session at the time of Rosales's arrest;

      b)     not providing Rosales with the warrant at the time of his arrest;

      c)     threatening Mr. Rosales with physical violence if he resisted arrest due to the constables not having a warrant;

      d)     arresting Mr. Rosales on a debt-collection case.

49.     These unlawful practices are commonplace in the Travis County. Both Travis County and Austin, Texas have a long history of systemic discrimination against Latinx and Black residents. Over the past five years, multiple unarmed Latinx and Black residents have been shot and killed by the Austin Police Department and the Travis County Sheriff's Department. Defendant Tim Sulak's actions are the norm, not the exception. Moreover, the other Defendants in this lawsuit failed and refused to implement the *ODonnell* ruling affirmed by the United States Court of Appeals for the Fifth Circuit for nearly two years in order to maximize campaign contributions and put pressure on indigent and minority residents to plead guilty. *See ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018)

## VII. TRAVIS COUNTY JAILED PRISONERS BECAUSE THEY COULD NOT AFFORD BOND DESPITE FEDERAL PRECEDENT IN *ODONNEL V. HARRIS COUNTY*

50.     The same judges that created and operated Travis County's Two-tier (one system for White residents, another for poor and minority) bail system are also the

policymakers that voted on and approved the bond table. This table set Defendants' bail amounts without regard to an individual Defendant's ability to pay, the alleged offense, or the Defendant's danger to the community.

51.     Despite the recent Federal Court decisions in *ODonnell v. Harris County, Daves v. Dallas County,* and *Booth v. Galveston County,* and the Fifth Circuit decision affirming *ODonnell*, the policymakers of Travis County refused to implement meaningful reforms to their bail system and thus created a homegrown system of mass incarceration for Black and Latinx people. *See ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018).

52.     The most egregious deprivation of liberty and Constitutional violations occurs to indigent residents including PLAINTIFF who are at the mercy of Judges and policymakers that insist on operating the Two-tier justice system in violation of Federal court rulings.  Indeed, attorneys who are regular campaign contributors are more likely to have their clients' bond amounts reduced.

53.     This extreme disregard of the U.S. Constitution, the Texas Constitution, and Federal Court precedent show an intentional, purposeful, and willing conspiracy to throw poor people and people of color under the Travis County *Pay to Play* bus. In the meantime, residents of Travis County who cannot pay their bonds continued to die in the Travis County Jail via mysterious circumstances that Travis County officials continually explain as 'Natural Causes'. *See* **Exhibit I** *Supra.*


**VIII. POOR DEFENDANTS AND DEFENDANTS OF COLOR DIED IN TRAVIS COUNTY JAIL BECAUSE THEY COULD NOT POST BAIL, NAZIS WOULD BE PROUD**

54.     The Defendants turned the Travis County Jail into a state-sanctioned Extermination Camp for people of color and poor defendants.

55.     While the DEFENDANTS collect $160,000 paychecks, generous benefits, and sleep in million-dollar homes, poor Defendants and people of color continued to die in the Travis County jail because they could not afford bail. This callous disregard for human life shows the wanton and reckless attitude deployed by Travis County policymakers despite the Federal court rulings in *ODonnell v. Harris County, Daves v. Dallas County,* and *Booth v. Galveston County,* and the Fifth Circuit decision affirming *ODonnell. See ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018).

56.     Although the United States defeated Nazi Germany in World War II, a homegrown Extermination Camp emerged in Travis County, Texas. Local news media copiously reported on the story that in 2018, Travis County broke a record for inmate deaths: where inmates die of 'natural causes'[1] while Travis County Policymakers ignored Federal Court rulings and lived the life of luxury on the taxpayer's dime.

57.     Despite the 2020 protests in Austin, regarding the death of unarmed Black suspect George Floyd, not one of the DEFENDANTS acknowledged the deaths of any of the indigent and minority Travis County inmates identified in **Exhibit 1**.

58.     No one has spoken their names.

### IX. TRAVIS COUNTY'S BAIL SCHEDULE POLICY VIOLATED CONSTITUTIONAL RIGHTS AND UNJUSTIFIABLY TREATED POORER PEOPLE DIFFERENTLY

---

1 – *See* Nina Hernandez, County on Pace to Set Record for In-Custody Deaths (2018) https://www.austin chronicle. com/news/2018-08-10/county-on-pace-to-set-record-for-in-custody-deaths/ (last visited March 25, 2019).

59.    Travis County's pretrial detention practices illegally continued for two years, despite the Fifth Circuit decision in *ODonnell.* Under DEFENDANTS' policy, the county jailed the vast majority of people booked into the county jail for more than a week unless they pled guilty or paid the secured bail listed in the Travis County bond table. Of course, every one of these people was presumed to be innocent.

60.    Travis County kept anyone who <u>could not afford</u> a predetermined payment locked in jail, while allowing similarly situated people who could afford that payment to go free. The County jailed residents using a bail schedule without any inquiry into ability to pay or consideration of less restrictive alternatives.

61.    Travis County lacked any legitimate justification for refusing to release people who could not make a payment. Research shows, and a federal court in neighboring Harris County recently found, that secured bail is no more effective at securing court appearances than personal bond.[2]

62.    As for public safety, secured bail is demonstrably harmful. Requiring people to pay for their release means that people with low incomes spend more time in jail.  And after just brief periods of detention, each additional day a person spends locked in jail increases the likelihood that she will be rearrested after she is released.

63.    The use of secured bail has a severely disparate impact on Black and Latinx arrestees. African-Americans are five times more likely to be detained than their white counterparts, and three times more likely to be detained than their Latinx counterparts.[3] African-Americans and Latinx are more likely than whites to be detained

---

2 – *See* Bail Fail: Why the U.S. Should End the Practice of Using Money for Bail, Justice Policy Inst. 15 (2012).
3 – *See* Stephen Demuth, Racial and Ethnic Differences in Pretrial Release Decisions and Outcomes: A Comparison of Hispanic, Black and White Felony Arrestees, 41 Criminology 873, 899 n. 89 (2003).

because they cannot afford their bail. People who cannot afford to pay for their release, disproportionately African-American and Latinx residents, are significantly more likely to abandon valid defenses and plead guilty just to get out of jail. They are also more likely to receive longer jail sentences.

64.     Other alternatives range from simple interventions to help people appear in court,[4] such as reminders of court dates and transportation to court, to more intensive Supervision,[5] such as required reporting or electronic monitoring. The key to effective implementation of these alternatives is to tailor conditions of release or detention according to the needs of each individual.

65.     This approach works. For example, Washington, D.C. has relied heavily on alternatives to prepaid bail for more than twenty years. They enjoy a reappearance rate of 90%, with no re-arrest for violent crime for over 98% of people. The cost of release is approximately $18 per person per day (at Washington, D.C., salary rates), compared with the cost of approximately $59 per person per day to imprison someone in Travis County Jail.

66.     Travis County did not consider any of these alternatives. Instead, the County chose to jail thousands of people on the basis of their relative wealth, without offering them an individualized hearing about their ability to pay bail and without consideration of less restrictive alternatives to pretrial detention.

---

4 – Brice Cooke et al., Using Behavioral Science to Improve Criminal Justice Outcomes: Preventing
     Failures to Appear in Court 15–18 (Jan. 2018).
5 - Christopher Lowenkamp & Marie VanNostrand, Exploring the Impact of Supervision on Pretrial
     Outcomes 17 (Nov. 2013).

## X. THE BAIL SCHEDULE POLICY DEPRIVES PEOPLE OF LIBERTY WITHOUT ADEQUATE PROCEDURAL PROTECTIONS

67.     The Bail Schedule Policy violates procedural due process by depriving people of their liberty without adequate procedural protections.

68.     As described above, bail is initially set *ex parte.* Either by the arresting officer for misdemeanor arrestees, or the duty prosecutor for felony arrestees, or in PLAINTIFF'S instance by a District Judge acting on behalf of a debt collector. At magistration, the County deprives arrestees of advance notice of the basis for the predetermined bail amount and an opportunity to be heard on why the Magistrate should lower bail or grant personal bond.

69.     Travis County does not admit any attorneys to magistration. The proceedings take place in the absence of a prosecutor, therefore Magistrates receive no information about individualized evidence demonstrating flight risk or dangerousness (despite the prosecutors' ethical obligations noted above) or hear a defense attorney argue that the prosecution has failed to meet its burden.

70.     Instead of holding a meaningful hearing, Magistrates automatically adopted bail amounts that keep less-wealthy arrestees behind bars. Magistrates issue these *de facto* pretrial detention orders without satisfying the heightened procedural requirements for a pretrial detention order: a counseled hearing where the arrestee can present and rebut evidence concerning flight risk or danger; advance notice of the hearing; and individualized, reasoned findings, by clear and convincing evidence, that no other condition or combination of conditions of release could address the arrestee's perceived risk of flight or danger.

71.     After magistration, people are jailed under the bail schedule for more than a week—often much more than a week—before the County offers a bail hearing with any of the required procedural protections. County policymakers could mandate constitutionally adequate pretrial detention proceedings consistent with Federal law, but instead, they chose a pretrial detention system based on wealth.

## XI. TRAVIS COUNTY IS LIABLE FOR THE BAIL SCHEDULE POLICY AND DELAY IN IMPLEMENT FIFTH CIRCUIT RULING IN *ODONNELL*

72.     Travis County is liable for its Bail Schedule Policy. County policymakers know about—and share responsibility for creating and maintaining—the Bail Schedule Policy despite *ODonnell.*  County officials knew about the recent Federal court rulings in *ODonnell v. Harris County; Daves v. Dallas County;* and *Booth v. Galveston County,* and the 2018 Fifth Circuit decision affirming *ODonnell. See ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018).  Travis County officials had the power to immediately correct the Bail Schedule Policy, yet they failed to do so. This led to the injury and damages suffered by Plaintiff.

73.     The DEFENDANTS and the Travis County Commissioners Court knew that the Magistrates and Judges had a widespread, well-settled practice of automatically adopting bail amounts set by prosecutors and arresting officers under the unconstitutional and illegal Travis County minimum bail schedule. DEFENDANTS set these bail amounts without any inquiry into a resident's ability to pay or consideration of less restrictive alternatives, without adequate procedural protections, and without appointment of counsel. And they also knew that the bail schedule resulted in pretrial detention of people who are too poor to pay.

74.     The Bail Schedule Policy was imposed frequently, flagrantly, and routinely. It resulted in severe and obvious constitutional violations, to which, as explained below, the Judges', the District Attorney's, and the Commissioners' Court's attention had been called, and which had been the subject of considerable public debate.

75.     Prosecutors and arresting officers set secured bail amounts under the minimum bail schedules, and magistrates automatically adopt these bail amounts, without any individualized determination of ability to pay or the need for particular conditions of release, in hundreds of cases every week and in open violation of *ODonnell.*

76.     Magistrates and Judges issued these orders openly, by reading a script and signing preprinted bail orders, in proceedings lasting less than a minute, without any inquiry into ability to pay, flight risk, or dangerousness.

77.     DEFENDANTS received formal reports from the Texas Indigent Defense Commission and the Council on State Governments detailing problems with the Bail Schedule Policy.

78.     The reports concluded that:

a.     Magistrates do not set individualized bail amounts, and instead set bail based on a bail schedule.

b.     Magistrates set bail under the bail schedule without any individualized inquiry into ability to pay, flight risk, or danger.

c.     Magistrates do not make bail decisions from a presumption of release on recognizance or personal bond.

d.     Neither the Magistrates nor the Judges have implemented any meaningful alternatives to pretrial detention, other than trying to collect money from people who are released.

e.     No County official has electronically aggregated data on rates of failure to appear in court, prohibiting the County from tailoring pretrial release practices to evidence of failure to appear.

f.    There is no jail diversion program or pre-booking screening for people charged with misdemeanors, meaning that everyone charged with a Class A or B misdemeanor is arrested and booked into jail.

g.    There have been many unexplained deaths in the Travis County Jail and per-capita, the Travis County Jail has the highest prisoner death rate in the state of Texas.[6]

79.    DEFENDANTS were aware of these issues, but refused to implement the Fifth Circuit precedent in *ODonnell* for two years, leading to the Plaintiff's arrest and illegal detention.

80.    DEFENDANT District Attorney MARGARET MOORE also could have corrected the Bail Schedule Policy. She had the authority to rescind the felony and misdemeanor bail schedules and instruct prosecutors to stop setting minimum bail amounts. These amounts were later automatically adopted by county Magistrates and Judges and transformed into *de facto* pretrial detention orders for those who could not afford the required amounts. But the District Attorney did not take any action to attend magistrations, rescind the bail schedule, or otherwise stop prosecutors from recommending minimum bail amounts.

81.    The Commissioners' Court could have corrected the Bail Schedule Policy. The Commissioners' Court had the authority under state law to hire staff for the personal Bond office and instruct them to interview arrestees; produce informed, individualized pretrial release recommendations; provide Magistrates with those recommendations to facilitate individualized pretrial release decisions; and make themselves available for

---

6 - The so-called 'investigations' into these deaths are always headed up by the Travis County Sheriff's Department and Texas Rangers who determine that every death was due to 'Natural Causes'.

pretrial interventions and supervision to facilitate pretrial release. But the Commissioners' Court refused to fund, staff, or instruct the personal bond office to do so.

## XII. ALLEGATIONS

82.     Plaintiff seeks injunctive relief to stop this illegal bail regime and to force the DEFENDANTS to: a) provide counsel for indigent residents, b) advise indigent residents of their right to counsel, c) follow the Texas Gov't Code §21.002(d), d) follow the Sandra Bland Act, and e) adopt the rulings issued by Federal courts in the *ODonnell v. Harris County; Daves v. Dallas County;* and *Booth v. Galveston County;* and the 2018 Fifth Circuit decision affirming *ODonnell. See ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018).

83.     Plaintiff alleges that DEFENDANTS violated his rights under the Sixth Amendment and Fourteenth Amendment to the United States Constitution, the Texas Constitution Article I §18, the Federal Fair Debt Collection Practices Act, the Texas Supreme Court ruling in *Cantey Hanger, LLP v. Byrd,* and the Tex. Gov't Code §21.002(d), and the Sandra Bland Act.

84.     Plaintiff alleges that DEFENDANTS participated in a scheme that violates 42 USC §1983 and as policymakers, the DEFENDANTS are liable for the willful operation of the scheme to: a) conduct a contempt hearing without Plaintiff's appearance in a case, b) issue an illegal warrant for Plaintiff's arrest (*See* **Exhibit 2**), c) arrest Plaintiff, d) violate his civil rights, e) not provide Plaintiff with a personal recognizance bond that was mandatory under Tex. Gov't Code §21.002(d), f) conduct a court hearing where Plaintiff was not allowed to bring law books or consult the law library, g) not advise Plaintiff of his right to counsel, h) not provide the Plaintiff with counsel, i) not

advise the Plaintiff of his right to a jury trial, j) not contact the Chief Administrative Judge of the region to appoint a judge for the contempt hearing, k) conduct a hearing where Plaintiff (as an officer of the court) was handcuffed, shackled, and made to wear a soiled jail uniform, and l) attempt to obtain an illegal prejudgment garnishment of $20,000 from Plaintiff.

85.     Plaintiff alleges that DEFENDANT SULAK coordinated with Austin Debt Collector Attorneys Jason Panzer and Jim Harrington to send armed Travis County Constable Dale Multer to arrest Mr. Rosales at Mr. Rosales's apartment on multiple occasions from March 11, 2019-August 15, 2019. Even though the arrest warrant was never input into the system, policymaker DEFENDANT SULAK ordered the Constable to arrest PLAINTIFF and deprive PLAINITFF of his liberty.

86.     The $20,000 all-cash bond ($200,000 cash surety equivalent) was issued by DEFENDANT SULAK without regard to Plaintiff's ability to pay. Plaintiff has no criminal history whatsoever and had no arrests, indictments, or convictions prior to his arrest. DEFENDANT SULAK did not appoint Rosales a Defense counsel, nor did the DEFENDANTS ever offer to provide legal counsel at any point during Rosales's arrest and incarceration.

87.     The $20,000 all-cash bond was issued by Defendant Sulak as a favor to his friends and neighbors, Austin Debt Collectors Jason Panzer and Charles Herring and as prejudgment garnishment. Austin Debt Collector Jason Panzer was also able to manipulate the Travis County case assignment system with the help of Defendant Sulak's Court Coordinator. Although Travis County claims the case assignment system is random, it is not and can be manipulated with the help of court staff to get settings in front of preferred judges. Panzer was able to get four consecutive hearings with Sulak,

even though Sulak was not the presiding judge of the 419th District Court. The odds of this occurrence are 1 in 160,000.

88.     Plaintiff alleges that DEFENDANTS operated a Two-tier bond system that gives preference and lower bail amounts to white arrestees who can hire attorneys that make regular campaign contributions to DEFENDANT judges.

89.     Plaintiff alleges that DEFENDANTS operated a two-tier system of justice in Travis County that imprisons minority and poor residents and gives favoritism to White Defendants that have money, means, and wealth in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.

90.     Plaintiff alleges that DEFENDANTS operated a concentration camp known as the Travis County Jail that has the highest inmate death rate in the State of Texas. Virtually all of the dead <u>are young and otherwise healthy Black and Latinx detainees</u> who could not afford bail. Virtually all of the deaths are later attributed to 'Natural Causes'. No secondary or outside autopsies are ever performed on these dead Travis County inmates, all of whom are presumed innocent.

91.     Plaintiff alleges that DEFENDANTS operated a system of justice that amounts to mass incarceration and promotes the death and extermination of 'unwanted' Black and Latinx individuals from Travis County, Texas.

92.     Plaintiff alleges that DEFENDANTS even after being made aware of the Federal court rulings in *ODonnell v. Harris County, Daves v. Dallas County,* and *Booth v. Galveston County,* and the 2018 Fifth Circuit decision affirming *ODonnell* (*See ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018)), refused to implement any reforms to the bail system in Travis County and delayed implementing the *ODonnell* decision by two years.

93.     Plaintiff was arrested at the Austin Bergstrom Airport by Constables from Travis County Precinct 1. The Constables <u>did not have</u> a copy of the arrest warrant and did not provide it to Rosales, when Rosales asked for a copy of the warrant. Rosales repeatedly protested the arrest and noted the False Arrest and the unconstitutional nature of the arrest. The constables were wearing body cameras.

94.     While handcuffed, Plaintiff was also assaulted by a male constable that caused Rosales to suffer a shoulder injury. At the Travis County Jail, jailers refused to provide Rosales treatment, when Rosales noted that his shoulder was injured during the arrest.

95.     As Rosales was arrested at 3:15pm on a Thursday afternoon, Rosales <u>should have</u> been taken to a Travis County court or Justice of the Peace as courts were open until 5pm that day. However, the Constables instead chose to book Rosales in the county jail and punish him for being poor, indigent, and Latinx.

96.     After his arrest and transport to the Travis County Jail, jailers took away all of Plaintiff's VA-issued medication, took away his medical appliances, and refused to transport Plaintiff to the hospital after Plaintiff's blood pressure began to spike, and violated the Texas *Sandra Bland Act,* Texas SB 1849

97.     Plaintiff was placed in a series of cold cells, was laughed at by nurses at the Jail when he noted his blood pressure was spiking and that he needed to be taken to the hospital, and was held in **solitary confinement** for over 30 hours. One nurse told Rosales if he didn't want his blood pressure to spike, he shouldn't get arrested in the first place. This is cruel and unusual punishment – confiscation of state-issued medication and placement in solitary confinement.

98.     Although a Magistrate came by Rosales's cell at 4am, the Magistrate <u>did not have the authority</u> to reduce Rosales's bail or release Rosales since the bond was set by a District Judge. When Rosales asked the Magistrate to call the Court to release him, the Magistrate laughed and said, "I'm not going to call anyone, it's 4am."

99.     On Friday afternoon, when Rosales was finally able to get a court appearance, Rosales was taken to court in a soiled jail jumpsuit, shackles, handcuffs, and leg irons. Plaintiff was not allowed to visit the law library, prepare a defense, use a pen, or bring any legal materials to the hearing. Plaintiff repeatedly requested a reset of the hearing, so that he could appear in his normal business suit and lawyerly attire. However, District Judge Orlanda Naranjo (who is not elected, but hired by Travis County on a part-time basis) refused Rosales's request and ordered that the hearing be conducted at that time. Judge Naranjo also refused to provide Rosales with Defense counsel and made no attempt to bring in Pre-trial services to interview Rosales. Naranjo violated Tex. Gov't Code §21.002(d) by refusing to release Rosales on a personal recognizance bond and not contacting the Chief Administrative Judge of the region to appoint a judge.

100.    Plaintiff had to argue for his release, from memory, without law books or materials, while handcuffed, with his hands shackled to his body, in leg irons, and was forced to wear a previously soiled jail jumpsuit. After the hearing began, and only because Plaintiff repeatedly objected, Judge Naranjo allowed Rosales to have one hand free. Rosales literally had to argue for his liberty with only one hand, while the rest of his body remained in restraints and shackles.

101.    Rosales was sued to collect a debt and was imprisoned by Travis County officials, due to his race and ethnicity, as part of an extortion and a long-running pay-to-play scheme that operates to give preference to White residents and judges' campaign

contributors.

## XIII. MULTIPLE VIOLATIONS OF STATE PROCEDURES FOR JUDGES BY FORMER DISTRICT JUDGE TIM SULAK

102.    As a State District Judge, DEFENDANT SULAK was provided a copy of the rules for State of Texas Judicial Proceedings. The book provides State District Judges with rules and specific portions of the Texas Government Code.

103.    In Chapter 8, the section on Contempt proceedings, the book describes and notes the limitations that State District Courts have on the type of punishments for contempt that they may issue.

104.    Instead of following the book, and its attendant portions of the Texas Government Code, Defendant Sulak chose to create his own rules in order to help his neighbor and the Plaintiff's attorney in the debt collection case – Charles Herring. Sulak was also contacted by and spoke *ex-parte* several times with Debt collector attorney Jason Panzer on the Rosales debt case.

105.    Specifically, Defendant Sulak purposely violated the following Texas Rules:

A.    Improper finding of Direct contempt: There was no exigent situation created by Rosales or his inability to answer discovery in the case. Thus, Defendant Sulak improperly found Rosales in direct contempt. *See Ex parte Knable,* 818 S.W.2d 811 (Tex. Crim. App. 1991).

B.    Improper finding of Indirect contempt: Defendant Sulak did not follow the mandatory procedures to hold Rosales in indirect/constructive contempt. Specifically, Sulak (acting as the District Court) did not:

1)  Advise the accused of the charges and provide a reasonable opportunity to refute via defense or explanation. *Cooke v. United States,* 45 Sup. Ct. 390, 394 (1925).

2)  Provide full and complete notice of the conduct with which the contemnor is charged. *In re Rowe,* 113 S.W.3d 749 752 (Tex. App.-Austin, 2003 no writ); *In re R.E.D.,* 278 S.W.3d 850, 856 (Tex. App.-Houston [1st District] 2009, no writ).

3)  Provide adequate notice of the court order alleged to have been violated, *Ex parte Conway,* 419 S.W.2d 827, 828 (Tex.1967).

4)  Provide ample time to prepare and respond to the allegation. In re Oliver, 68 Sup. Ct. 499, 507 (1948), *Ex parte Martin,* 656 S.W.2d 443, 445 (Tex. Crim. App. 1982).

5)  Provide reasonable notice of the time and date of the contempt hearing. *Ex parte Vetterick,* 744 S.W.2d 598, 599 (Tex. 1988), Tex. Fam. Code §157 .062, and the right to legal counsel. *Cooke,* 45 Sup. Ct. at 395, *Ex parte Hiester,* 572 S.W.2d 300, 302 (Tex. 1978).

6)  Advise of the right to appointed counsel if the alleged contemnor is indigent, Tex. Fam. Code§ 157.163(b), *Ex parte Gunther,* 758 S.W.2d 226, 227 (Tex. 1988).

7)  Advise of the right to a jury trial if the potential punishment exceeds 6 months in jail. *Muniz v. Hoffman,* 422 U.S. 454, 95 S. Ct. 2178, 2190 (1975), *Ex parte Werblud,* 536 S.W.2d 542, 546 (Tex. 1976)

8)  Determine the contemnor's ability to comply with the court order, Chambers, 898 S.W.2d at 261 (defense of inability must be shown by contemnor), *In re Lausch,* 177 S.W.3d 144, 155 (Tex. App.-Houston [1st Dist.] 2005, no pet.).

106.    Additionally, as an attorney licensed in Texas and an officer of the Court, Mr. Rosales had the right to be released immediately (prior to a contempt hearing) on a personal recognizance bond. *See* Texas Gov't Code §21.002(d). Defendant Sulak knew about this provision of the Texas Gov't Code, yet instead chose to violate it in order to force Rosales to pay the debt collectors $20,000 cash.

107.     Rosales repeatedly asked the constables, arresting officers, jailers, jail staff, and part-time contract Judge Orlinda Naranjo to be released. None of the Travis County officials and employees followed Texas Gov't Code §21.002(d) and Mr. Rosales was held in solitary confinement for 30 hours, including an additional six hours in solitary after the hearing with Judge Naranjo on November 15, 2019.

108.     In summary, the named Defendants found Mr. Rosales in contempt first, ordered his arrest, and imprisoned him in solitary confinement before the contempt hearing was conducted. The Defendants also refused to release Mr. Rosales as an officer of the Court, on a personal recognizance bond, in violation of Texas Gov't Code §21.002(d).

109.     This scheme was carried out by Defendant Sulak in order to pressure Mr. Rosales to pay the debt collector attorneys Jason Panzer, Charles Herring, and Jim Harrington the amount of $20,000 on an alleged debt of $250,000.

110.     These violations were intentional because Defendant Sulak has a copy of the bench procedures manual. Yet, Sulak decided not to follow the procedures and instead implement his own scheme to help his neighbor Charles Herring. At the time, Sulak had a campaign debt of over $100,000 that he needed to reduce.

## XIV. CLAIMS FOR RELIEF

**Count One**: **Wealth-Based Imprisonment, Fourteenth Amendment Due Process & Equal Protection Clauses Against All Defendants**

111.     Plaintiff incorporates all allegations in the foregoing paragraphs.

112.     Under the Bail Schedule Policy, Defendants locked residents in jail

because Travis county residents were unable to pay secured bail set under a bail schedule, while Defendants released other, similarly-situated people who were able to pay. Travis County's wealth-based system of imprisonment locks poorer—and presumptively innocent—people in jail while allowing wealthier (primarily White) individuals accused of the same crimes to go free until trial.

113.    Defendants set these unaffordable secured bail amounts without any inquiry into or findings concerning an arrestee's ability to pay or the propriety of less restrictive, alternate means of achieving a compelling government interest, and without determining that detention is necessary notwithstanding an arrestee's inability to pay.

114.    Defendants abused this system and gave special favors to attorneys that paid to play. The select attorneys, that made substantial campaign contributions, were given lower bail amounts for their clients. Moreover, the DEFENDANTS will go so far as to order the arrest of innocent people, whereas in PLAINTIFF'S instance, the arrest is prohibited by Federal law and the Texas Constitution to begin with.[7]

115.    Travis County's wealth-based Bail Schedule Policy and pay to play system violates Plaintiff's rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution.

**Count Two: Procedural Due Process, Fourteenth Amendment Due Process Clause Against Travis County, Judge Tim Sulak, and Judge Orlinda Naranjo**

116.    Plaintiff incorporates allegations in the foregoing paragraphs.

117.    Under the Bail Schedule Policy, Defendants set unaffordable secured bail

_____

7 – *See* the Federal Fair Debt Collections Practices Act, 15 USC §1692; *see also* Texas Constitution, Art I. Sec 18.

under a bail schedule used by Travis County Judges and Magistrates. The hearings lasted less than a minute for each person. Defendants then lock citizens in jail because citizens are unable to pay their bail.

118.    These unaffordable bail amounts function as *de facto* pretrial detention orders. Defendants set these unaffordable bail amounts at magistration and in court without advance notice of the rights at stake, appointment of defense counsel, the opportunity to present or contest evidence, or a written record of reasoned findings by clear and convincing evidence that secured bail in the amount set is the least restrictive means of achieving the compelling government interest.

119.    Despite the Federal Court ruling in *ODonnell v. Harris County* and the accompanying Fifth Circuit decision upholding *ODonnell,* Defendants refused to implement the *ODonnell* decision for two years.

120.    In the instant case, DEFENDANT SULAK set Plaintiff's bond at $20,000 cash ($200,000 cash surety equivalent) without any inquiry into Mr. Rosales's ability to pay and in violation of *ODonnell* and Tex. Gov't Code §21.002(d). Plaintiff had no prior criminal history, arrests, warrants, indictments, or unpaid parking tickets.

121.    DEFENDANT SULAK used the bail table adopted and implemented by DEFENDANTS. Defendant Sulak issued a felony-level bond in a debt collection case. Sulak then ordered armed Travis County Constables to Plaintiff's residence to forcibly arrest Plaintiff and hold him in custody until Plaintiff paid $20,000 cash. The plan was to seize $20,000 from Rosales and transfer the funds to Debt collector attorneys Jason Panzer, Charles Herring, and Jim Harrington. This is also an illegal prejudgment garnishment.

122.     The entire arrest warrant issued by Sulak is illegal because the arrest is

prohibited by the Federal Fair Debt Collection Practices Act, the Texas Constitution

Article I §18, the Texas Supreme Court decision in *Cantey Hanger, LLP v. Byrd,* 467

S.W.3d 477 (Tex. 2015), and the Tex. Gov't Code §21.002(d). One of the reasons

DEFENDANT SULAK ordered the arrest of Plaintiff is that the attorneys who sued

Plaintiff for debt are friends and neighbors to DEFENDANT SULAK and live in the

same wealthy area of Austin – Tarrytown.

123.     Moreover, DEFENDANT SULAK is not even the presiding judge of the

419th Judicial District where the debt lawsuit was docketed. The presiding judge of the

419th District Court is the Hon. Catherine Mauzy. Sulak headed the 353rd District Court

until he lost his election in 2021.[8]

124.     Even though Travis County claims the court system is operated on a

random case-assignment system, the system can be manipulated with the help of court

coordinators, to obtain multiple settings in front of friendly judges as was done in

Plaintiff's arrest. This manipulation was accomplished via the assistance of Travis

County employee Warren Vavra. The chances of Sulak randomly getting four

consecutive hearings were 1 in 160,000.

125.     Tellingly, the arrest warrant for PLAINTIFF instructs that once any State

of Texas Sheriff or Constable arrests Mr. Rosales, that the first person to call is **Attorney**

**JASON PANZER** at 512-680-3067 then **WARREN VAVRA** at 512-854-9089. *See*

**Exhibit 2.** DEFENDANT TRAVIS COUNTY employs Warren Vavra as a court

─────────────────

8 – A Change.org petition was launched in 2017 to recall Judge Sulak for *ex parte* communications,
    corruption, and gender bias. The petition received 1,848 signatures.

employee.

### Count Three: Right to Counsel, Sixth Amendment Right to Counsel Clause Against Defendants Travis County, Tim Sulak, and Orlinda Naranjo

126.    Plaintiff incorporates allegations in the foregoing paragraphs.

127.    Under the Bail Schedule Policy, Defendants set unaffordable secured bail in magistrations and court hearings without defense counsel present. Defendants then locked citizens in jail because citizens were unable to pay their bail.

128.    No inquiry was made into PLAINTIFF'S ability to pay the $20,000 cash bond amount. PLAINTIFF was not provided counsel. Nor was plaintiff ever served a copy of the pleadings, discovery, motion to compel, or motion for contempt papers – despite the fact that debt collectors Jason Panzer and Charles Herring knew Plaintiff's home address and long-time attorney Gaines West.

129.    Defendants' actions as Policymakers deprived Plaintiff of his rights under the Sixth Amendment. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel at each critical stage of the criminal process. Critical stages include all pretrial hearings that may prejudice the fairness of subsequent criminal proceedings. Given that DEFENDANT SULAK ordered the arrest of PLAINTIFF for an indefinite time (using the Travis County Bond Table) until the $20,000 all-cash bond was paid, DEFENDANT SULAK violated Plaintiff's rights under the Sixth Amendment.

130.    This process is repeated in Travis County's mass incarceration and 'Pay to Play' scheme enforced on indigent citizens and people of color.

131.    Bail-setting hearings have the power to severely prejudice the fairness of

subsequent criminal proceedings. These hearings can settle the fate of the person accused and render subsequent proceedings a mere formality. Bail setting is a critical stage of prosecution, and the Sixth Amendment requires that arrestees have the benefit of counsel at such proceedings. By setting the PLAINTIFF'S bail without first appointing defense counsel to represent and assist him, DEFENDANTS denied Plaintiff his constitutional right to counsel and thereby materially prejudiced the fairness of his subsequent hearing.

132.    DEFENDANT ORLINDA NARANJO also violated Plaintiff's Sixth Amendment right to counsel as she: a) failed to notify Plaintiff about his right to counsel, b) failed to appoint counsel for Plaintiff, c) failed to notify the Plaintiff of his right to a jury trial, d) failed to release counsel on a personal recognizance bond mandated by the Tex. Gov't Code §21.002(d), e) made Plaintiff appear for a hearing without legal materials or use of the law library, f) made Plaintiff appear for a final hearing while Plaintiff was in handcuffs, shackles, and forced to wear a previously soiled jail jumpsuit.


**Count Four: 28 U.S.C. §2201, Declaratory Judgment Act**

133.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

134.    Plaintiff is entitled to a declaratory judgment that the Travis County Bail and Detention System violated the Sixth Amendment, Fourteenth Amendment, and Fifth Circuit precedent regarding bail procedures discussed in *ODonnell v. Harris County, Texas,* 882 F.3d 528 (5th Cir.2018).

135.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988.

**Count Five: Civil Rights Conspiracy in violation of 42 USC §1985(3)**

136.    Plaintiff repeats and re-alleges each of the foregoing allegations in this Complaint.

137.    Defendant Sulak conspired with Debt collector attorneys Charles Herring and Jason Panzer to deprive the Plaintiff of his liberty without due process. Defendant Sulak also repeatedly violated Texas laws, while a State District Judge and operating under color of law, to arrest and incarcerate the Plaintiff. Defendant Sulak's goal was to apply maximum pressure to Plaintiff to pay the debt collectors $20,000. Defendant Sulak agreed to do this as a favor for his neighbor Charles Herring.

138.    Despite clear provisions of the Texas Government Code, §21.002(d), that mandate the Plaintiff (as an Officer of the Court) had the right to be released immediately on a personal recognizance bond, multiple employees of Defendant Travis County refused to follow this provision of the Texas Gov't Code and kept the Plaintiff in solitary confinement for over 30 hours. The Travis County employees included: the arresting officers, the Magistrate who visited Rosales yet refused to reduce the bond, jailers, jail staff, and contract Judge Orlinda Naranjo.

139.    That multiple employees of Defendant Travis County conspired to deprive the Plaintiff of his Constitutional rights to: due process, trial by jury, right to counsel, and equal protection under the law.

140.    Defendant Sulak conspired with Jason Panzer and Charles Herring to deprive the Plaintiff of his liberty; the trio committed an overt act to arrest Plaintiff by illegally producing and forwarding an arrest warrant to the Travis County Constable's Office for Precinct 1; and that Plaintiff was injured by the actions of Defendant Sulak, Herring, and Panzer.

## XV. REQUEST FOR RELIEF

Plaintiff requests that this Court issue the following relief:

A.      An order finding the arrest warrant for Mr. Rosales was illegal on the basis that the warrant is a violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, the Federal Fair Debt Collection Practices Act, the Texas Constitution Article I §18, Texas Supreme Court precedent in *Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477 (Tex. 2015), and the Texas Government Code §21.002(d).

B.      An inquiry to determine how Defendant Tim Sulak was able to issue arrest warrants on civil debt collection cases outside of his court. And to determine why the arrest warrant ordered that Austin Debt collector attorney Jason Panzer was to be called on his cellphone immediately after Plaintiff's arrest.

C.      An injunction against Travis County, requiring as a precondition to issuance of an unaffordable secured money bail order:

   1)      A prompt hearing inquiring into ability to pay, and permitting the arrestee to present and rebut evidence concerning flight risk or dangerousness,

   2)      Appointment of defense counsel for the hearing, for anyone who cannot afford to retain counsel,

   3)      Advance written notice of the critical questions in the hearing,

   4)      Reasoned written findings of the arrestee's ability to pay, and

   5)      Reasoned written findings, by clear and convincing evidence, that secured money bail in the amount set is the least restrictive means of achieving the government's interest in mitigating the arrestee's risk of flight or danger to the community.

D.     A declaration against all Defendants that issuance of an unaffordable

secured money bail order without meeting the above preconditions

violates rights to equal protection and due process;

E.     A declaration against the Misdemeanor and Felony Judges that a bail

hearing is a critical stage of prosecution for purposes of the Sixth

Amendment right to counsel;

F.     A declaration that the Defendants must follow the Federal court decisions

and the 2018 Fifth Circuit precedent in *ODonnell v. Harris County,*

*Texas,* 882 F.3d 528 (5th Cir.2018) regarding the issuance of bail in Texas.

G.     An order finding that Plaintiff's incarceration and 30-hour placement into

solitary confinement was illegal;

H.     An order finding that Defendants Travis County, Sulak, and Naranjo:

1)     failed to provide Plaintiff with counsel,

2)     failed to advise Plaintiff of his right to counsel,

3)     failed to advise Plaintiff of his right to a jury trial,

4)     failed to provide Plaintiff a jury trial,

5)     failed to release Plaintiff on a personal recognizance bond in
violation of Tex. Gov't Code §21.002(d), and

6)     failed to contact the Chief Administrative Judge of the region to
appoint a separate judge for the hearing in violation of Tex. Gov't
Code §21.002(d).

I.     An order granting Plaintiff compensatory damages including, but not

limited to:

a.     Past and future physical pain and suffering;

b.     Past and future mental pain and anguish;

    c.      Damage to good name and reputation;

    d.      Past and future medical expenses; and

    e.      Loss of income

J.      An order granting Plaintiff punitive damages for the wanton and willful disregard of numerous State laws, Federal laws and the Sixth and Fourteenth Amendments to the U.S. Constitution.

K.      An order granting reasonable attorneys' fees and costs under 42 U.S.C. § 1983; and

L.      Any other relief this Court deems just and proper.

March 2, 2021                    Respectfully submitted,

                    By:    /s/ Louis S. Sorola
                             Louis S. Sorola
                             SB No. 00794990

                             LAW OFFICE OF LOUIS S. SOROLA
                             1999 W JEFFERSON ST
                             BROWNSVILLE, TX 78520
                             (956) 504-2911
                             louis.sorola@yahoo.com

                             ATTORNEY OF RECORD
                             ADMITTED WDTX

                    By:    /s/ Elia Cornejo-Lopez
                             Elia Cornejo-Lopez

                             LAW OFFICE OF ELIA CORNEJO-
                              LOPEZ
                             1040 FRONTAGE RD
                             BROWNSVILLE, TX 78520
                             (956) 909-6963
                             eclopezlaw@yahoo.com

                             ATTORNEY OF RECORD
                             PENDING ADMISSION PRO HAC VICE